IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

CINCINNATI INSURANCE          )
COMPANY,                      )
                              )
    Plaintiff,               )
                              )
    v.                       )          NO. 12-3289
                              )
H.D. SMITH WHOLESALE DRUG     )
COMPANY,                      )
                              )
    Defendant.               )

<u>OPINION</u>

RICHARD MILLS, U.S. District Judge:

Defendant H.D. Smith Wholesale Drug Company has moved for Partial Summary Judgment.

Pending also is the Defendant's Motion to Supplement the Record regarding the Motion for Summary Judgment.  The Motion to Supplement the Record is GRANTED.

I. INTRODUCTION

This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, wherein Plaintiff Cincinnati Insurance Company ("Cincinnati") seeks

a declaration regarding insurance coverage sought by Defendant H.D. Smith Wholesale Drug Company ("H.D. Smith"), in connection with an underlying lawsuit brought against it by the State of West Virginia ex rel. Darrell V. McGraw, Attorney General.  The underlying suit, State of West Virginia v. Amerisourcebergen Drug Corporation et al., Civil Action No. 12-C-141, was filed in the Circuit Court of Boone County, West Virginia. Cincinnati seeks relief in this Court in order to determine an actual controversy with H.D. Smith, regarding the parties' rights and controversies under the applicable Cincinnati insurance policies.

H.D. Smith distributes pharmaceutical products to pharmacies across the country, including within West Virginia.  The West Virginia action alleges that the defendants, including H.D. Smith, contributed to the prescription drug abuse epidemic in West Virginia by, among other things, negligently failing to recognize that the volume of prescription medications they distributed to pharmacies exceeded the legitimate medical need.  The West Virginia plaintiffs allege this negligence led to West Virginia citizens becoming addicted to and harmed by these prescription drugs.

H.D. Smith moves for summary judgment in this declaratory judgment action, asserting that Cincinnati has a duty to defend it in the West Virginia Action and, by failing to do so, Cincinnati has breached its insurance policies.

Cincinnati alleges that its policies apply only to sums that H.D. Smith becomes legally obligated to pay as damages because of "bodily injury" which is caused by an "occurrence" and to which the insurance otherwise applies.  Therefore, in order for a duty to defend to be found based on the motion, H.D. Smith must demonstrate that the damages at issue have been caused by an "occurrence" and that the damages sought qualify as covered damages, in this case, due to "bodily injury."

## II. FACTUAL BACKGROUND

### A. The Cincinnati Policies

For purposes of this motion, Cincinnati insured H.D. Smith between January 15, 2005[1] and January 15, 2013, under eight consecutively issued,

---

[1]Cincinnati's Amended Complaint concerns Cincinnati Policies with effective dates of January 15, 2001 through January 15, 2015.  The Summary Judgment Motion si directed at policies effective from 2005-2013.

one-year insurance policies providing commercial general liability coverage
("the Cincinnati Primary Policies") and commercial umbrella liability
coverage ("the Cincinnati Umbrella Policies") (collectively, "the Cincinnati
Policies").

The Cincinnati Primary Policies provide that: "We will pay those
sums that the insured becomes legally obligated to pay as damages because
of 'bodily injury,' or 'property damage' to which this insurance applies."
The Cincinnati Policies provide that if the insurance applies, then
Cincinnati has a "right and duty to defend" H.D. Smith in any suit seeking
damages for "bodily injury" caused by an occurrence.

Pursuant to the Cincinnati Primary Policies, "[d]amages because of
'bodily injury' include damages claimed by any person or organization for
care, loss of services or death resulting at any time from the 'bodily injury.'"
The Cincinnati Umbrella Policies provide that if the insurance applies,
Cincinnati has the "right and duty to defend against any 'suit' seeking
damages because of 'bodily injury.'" The Insuring Agreement provides in
part:

A.     Insuring Agreement

    1.     We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages for "bodily injury," "personal and advertising injury" or "property damage" to which this insurance applies:

        a.     Which is in excess of the "underlying insurance;" or
        b.     Which is either excluded or not insured by "underlying insurance."

It further provided for insurance only if the "bodily injury," "personal and advertising injury" or "property damage" is caused by an "occurrence" taking place in the "coverage territory" during the policy period.

The Cincinnati Policies define "occurrence" in pertinent part as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions;" define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time;" and define "suit" as "a civil proceeding in which money damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged."

<u>B. The Underlying West Virginia Action</u>

5

On June 26, 2012, the underlying plaintiffs commenced the West Virginia action on behalf of West Virginia citizens against thirteen defendants, including H.D. Smith, doing business in the State as pharmaceutical drug distributors.  On January 2, 2014, the underlying plaintiffs served an amended complaint naming twelve defendants, including H.D. Smith.

The underlying complaint purports to connect the underlying Defendants' lawful acts of distributing pharmaceuticals to the illegal conduct of licensed physicians who allegedly wrote bogus prescriptions, and licenced pharmacists who allegedly filled them at so called "pill mills." Thus, H.D. Smith and others have become "an integral part of the Pill Mill process," in violation of the law.  Additionally, those defendants have benefitted financially from the abuse of prescription drugs.  The West Virginia amended complaint alleged that H.D. Smith and the other defendants negligently contributed to the "pill mill" scheme by failing to recognize that the volume medication they distributed to pharmacies exceeded the legitimate medical need.  Moreover, it was negligent in failing

to recognize from its distribution pattern that West Virginia citizens were obtaining improper prescriptions from physicians and were filling them in West Virginia pharmacies to which H.D. Smith distributes its products. Additionally, the West Virginia amended complaint alleges that the negligence of H.D. Smith and the other defendants in failing to recognize this pattern led, in part, to West Virginia citizens becoming addicted to, and being harmed by prescription drugs, resulting in bodily injuries to West Virginia citizens.   Cincinnati asserts that, in addition   to alleging negligence, each cause of action in the underlying complaint is also based on knowing, intentional and unlawful conduct.

In the underlying action, West Virginia seeks purely economic losses associated with costs incurred by the State in response to the alleged "drug epidemic."

C. Counts in the West Virginia Action

In Count II of the underlying West Virginia amended complaint, the plaintiffs seek "Damages Resulting From Negligence and Violations of the West Virginia Uniform Controlled Substances Act," specifically alleging in

paragraph 30:

> The Defendants <u>have willfully turned a blind eye</u> towards the foregoing factors by regularly distributing large quantities of commonly-abused controlled substances to clients who are serving a customer base comprised of individuals who are themselves abusing prescription medications, many of whom are addicted and whom reasonably can be expected to become addicted or to engage in illicit drug transactions. The Defendants' negligent acts and omissions in violation of West Virginia's drug laws have lead [sic] to the dispensing of controlled substances for non-legitimate medical purposes of epidemic proportions, including the operation of bogus clinics that do little more than provide prescriptions for addictive controlled substances, thereby creating and continuing addictions to prescription medications.

In Count IV of the West Virginia amended complaint, the plaintiffs assert a "Public Nuisance" claim, alleging among other things that:

- Defendants failed to put in place effective controls and procedures to guard against suspicious orders.

- Defendants knew or should have known their conduct would cause hurt or inconvenience to the State of West Virginia in a multitude of ways.

- Defendants have negligently, intentionally, and/or unreasonably interfered with the right of West Virginians to be free from unwarranted injuries, addictions, diseases and sicknesses and have caused ongoing damage, hurt or inconvenience to the State of West Virginia and its residents exposed to the risk of addiction to prescription

8

drugs, who have become addicted, and/or have suffered other adverse consequences from the use of the addictive prescription drugs distributed by Defendants, and countless others who will suffer the same fate in the future as Defendants' conduct is continuing.

- Defendants have negligently, intentionally, and/or unreasonably interfered with the Public's right to be free from unwarranted injury, disease or sickness, and have caused ongoing damage, hurt or inconvenience to the public health, the public safety and the general welfare of the citizens of West Virginia.

- Defendants persisted in a pattern of distributing controlled substances in geographic areas, and in such quantities and with such frequency, that the Defendants knew or should have known that these substances were not being prescribed and consumed for legitimate medical purposes.

- Defendants' negligent conduct endangers the public health and safety and inconveniences the citizens of the State by, among other things, consuming hospital services, jails and prisons, court dockets, and law enforcement services.

In Count V of the West Virginia amended complaint, the plaintiffs assert a "Negligence" claim, alleging among other things, that:

- Defendants have a duty to exercise reasonable care in the distribution of controlled substances.  Defendants have breached this duty by their conduct alleged above.

9

- As a proximate result, Defendants and their agents have caused the State to incur excessive costs related to diagnosis, treatment and cure of addiction or the risk of addiction to such controlled substances, thus the State has borne the massive costs of these illnesses and conditions by having to provide necessary medical care, facilities and services for treatments of citizens of West Virginia who are unable to afford or otherwise obtain such necessary medical care, facilities and services.

- The Defendants were negligent in failing to monitor and guard against third-party misconduct, i.e. the conduct of the Pill Mill physicians and staff as well as corrupt pharmacists and staff and, in fact, by their actions the Defendants participated and enabled such misconduct.

- Defendants' acts and omissions as aforesaid imposed an unreasonable risk of harm to others separately and/or as combined with the negligent and/or criminal acts of third parties.

- The Defendants were negligent in not acquiring and utilizing special knowledge and special skills that relate to the dangerous activity in order to prevent and/or ameliorate such distinctive and significant dangers.

In the Amended Complaint herein, Cincinnati claims it is not required to provide coverage for damages, costs, injunctions or other relief sought in the West Virginia complaints.  Accordingly, it seeks a declaration that it has no duty or obligation under the Cincinnati Primary Policies and

Cincinnati Umbrella Policies to defend or indemnify H.D. Smith with respect to the underlying lawsuit filed by the State of West Virginia or for any other claims or demands relating to the injuries allegedly sustained by the State of West Virginia.

H.D. Smith contends that an insurer has a broad duty to defend and that duty is triggered if a single potentially covered claim is included in the underlying complaint.  The plaintiffs in the West Virginia underlying action allege a "covered occurrence."  Additionally, they seek damages for bodily injury and damages because of bodily injury, which the Plaintiffs contend is covered.

## III. DISCUSSION

### A. Legal standard

Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  The Court construes all inferences in favor of the non-movant.  See Siliven v. Indiana Dept. of Child Services, 635 F.3d 921, 925 (7th Cir. 2011).  To

11

create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture."  See Harper v. C.R. England, Inc., 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted). Because summary judgment "is the put up or shut up moment in a lawsuit," a "hunch" about the opposing party's motives is not enough to withstand a properly supported motion.  See Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008).  Ultimately, there must be enough evidence in favor of the non-movant to permit a jury to return a verdict in its favor.  See id.

The Court must "look to the allegations in the underlying complaint and compare these allegations to the relevant coverage provisions of the insurance policy."  Crum and Forster Managers Corp. v. Resolution Trust Corp., 156 Ill.2d 384, 393 (Ill. 1993).  "The allegations of the underlying complaint must be construed liberally, and any doubt as to coverage must be resolved in favor of the insured."  Illinois State Medical Ins. Services, Inc. v. Cichon, 258 Ill. App.3d 803, 808 (3d Dist. 1994) (citations omitted).  "The insurer's duty to defend is much broader than its duty to indemnify its insured."  Crum and Forster Managers Corp., 156 Ill.2d at

393-94, 620 N.E.2d at 1079.

An insurer's duty to defend is triggered if the complaint alleges facts within or potentially within policy coverage, even if the allegations are determined to be "groundless, false or fraudulent."  See U.S. Fid. & Guar. Co. v. Wilkin Insulation Co., 144 Ill.2d 64, 73 (Ill. 1991).  "Moreover, if the underlying complaints allege several theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy."  Id.  "What is important is not the legal label that the plaintiff attaches to the defendant's (that is, the insured's) conduct, but whether that conduct as alleged in the complaint is at least arguably within one or more of the categories of wrongdoing that the policy covers."  Cincinnati Insurance Co. v. Eastern Atlantic Insurance Co., 260 F.3d 742, 745 (7th Cir. 2001).

B. Whether West Virginia Complaint alleged a covered "occurrence"

Under the Cincinnati Policies, Cincinnati has a duty to defend H.D. Smith in any "suit" seeking damages for or because of "bodily injury" caused by an "occurrence."  "Occurrence" is defined as "an accident,

13

including continuous or repeated exposure to substantially the same general harmful conditions." The policies do not define "accident." However, Illinois courts have often defined "accident" as "an unforeseen or unfortunate occurrence, usually of an untoward or disastrous character or an undesigned, sudden, or unexpected event of an inflictive or unfortunate character." Stoneridge Development Co., Inc. v. Essex Insurance Co., 382 Ill. App.3d 731, 749 (2008).

Cincinnati contends that the West Virginia Complaint does not allege an "occurrence" within the policy because it alleges willful and intentional misconduct on the part of the insured which does not constitute an accident. This is not entirely accurate. Two of the eight counts specifically assert negligence. Other counts include allegations of both negligent and intentional conduct. Given that it must liberally construe the allegations of the underlying complaint, see Cichon, 258 Ill. App.3d at 808, the Court concludes that H.D. Smith has alleged an "occurrence."

C. Whether West Virginia action alleges covered "bodily injury"

(1)

14

The Cincinnati Policies require Cincinnati to "cover amounts" that the insured becomes legally obligated to pay as damages because of "bodily injury," and require Cincinnati to defend H.D. Smith in any "suit" seeking damages for "bodily injury" caused by an "occurrence." The term "bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." The Cincinnati Policies also provide that "[d]amages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury.'" When considering language in an insurance contract, "courts generally interpret the phrase 'because of bodily injury' more broadly" than 'for bodily injury.' Medmarc Cas. Ins. Co. v. Avant America, Inc., 612 F.3d 607, 616 (7th Cir. 2010).

H.D. Smith contends that the Amended Complaint in the West Virginia Action seeks damages for, or because of, bodily injury allegedly sustained by West Virginia citizens due to an occurrence. Paragraph 6 of the Amended Complaint states that "[t]he problems, damages and losses

15

related to the prescription drug epidemic in West Virginia include, inter alia, the following":

> (b) A per capita death rate from prescription drug overdose which has at all times been either the highest or the second highest recorded for all states in the United States.

> (c) Between 2001 and 2008 West Virginia deaths from overdoses involving prescription drugs quadrupled from 5.1 deaths per 100,000 residents to 21.5.

> (d) [A statistic from one West Virginia hospital that] approximately twenty (20) percent of patients admitted through the hospital's trauma service have an issue with narcotic usage which contributes to their injuries.  As such, the demand from the growing problem of addiction and management of addicted patients will eventually be too great for the available care provide[r]s unless the problem is addressed.

The Amended Complaint also alleges that H.D. Smith and the other defendants "interfered with the right of West Virginians to be free from unwarranted injuries, addictions, diseases, sicknesses and have caused ongoing damage, hurt or inconvenience to the State of West Virginia and its residents exposed to the risk of addiction to prescription drugs, who have become addicted, and/or have suffered other adverse consequences from the use of the addictive prescription drugs distributed by Defendants,

and countless others who will suffer the same fate in the future as Defendants' conduct is continuing."

(2)

At first glance, it appears that the plaintiff in the West Virginia action is seeking damages for, or because of, bodily injury.  As Cincinnati alleges, however, West Virginia is seeking economic and injunctive relief on its own behalf.  West Virginia is not seeking reimbursement of damages sustained by its citizens on account of their bodily injury and it is not seeking reimbursement for liability to its citizens.

In Medmarc, the Seventh Circuit considered the plaintiff insurance company's duty to defend under Illinois law in relation to a suit against Avent, a manufacturer of baby bottles and other accessories.  See Medmarc, 612 F.3d at 609.  The underlying suit alleged that Avent had sold a number of items that were contaminated with toxic chemical Bisphenol-A.  See id.  Avent contended that allegations in the underlying lawsuits that plaintiffs would not use the products out of fear of bodily injury was sufficient to allege a claim for damages "because of bodily injury," pursuant to the

insurance policies.  See id.  The insurance companies alleged that the underlying suits were not covered by the policies because the claims are limited to economic damages due to the purchase of certain products and these damages are not "because of bodily injury."  See id.  Although the court stated that the policy language should be interpreted broadly, see id. at 616, it found that the plaintiffs in the underlying case sustained purely economic damages unrelated to bodily injury.  See id. at 614.  Because the complaints did not seek damages for "bodily injury" as required by the policies, therefore, the insurers did not owe a defense under Illinois law. See id. at 618.

In Diamond State Ins. Co. v. Chester-Jensen, Inc., 243 Ill. App.3d 471 (1st Dist. 1993), the court considered whether the plaintiff insurance companies had a duty to defend their insured, the defendant manufacturer of refrigeration and other heat exchange equipment, in an action wherein the State of Illinois sought damages "resulting from the failure of the air conditioning system installed in the State of Illinois Center to adequately cool the building" during the summer.  See id. at 473.

The court considered the defendant's argument about lost or decreased worker productivity from employees who had suffered "bodily injury" and explained:

> Chester-Jensen's first argument, that coverage is present under the "bodily injury" provision of the policy is not persuasive.  It ignores the nature of the complaint being made by the State.  The State is not bringing this action on behalf of its employees, seeking recovery from damages sustained by them on account of their illness or other bodily injury.  Nor is the State seeking to be reimbursed or indemnified for its liability to its employees.  Rather, Chester-Jensen is claiming coverage for its liability to the State for the State's economic losses simply because those economic losses of the State are alleged in part to be attributable to illness or injury of the State's employees.

Id. at 1087.   The Appellate Court of Illinois reasoned that such an "interpretation would distort the meaning of this provision and extend its reach so as to provide coverage for any liability where bodily injury is a tangential factor." Id. at 1088.  Accordingly, the court held that the insurer had no duty defend the underlying suit.  See id.

In Cincinnati Ins. Co. v. Richie Enterprises LLC, Case No. 1:12-CV-00816, 2014 WL 3513211, (W.D. Ky. July 16, 2014), the court rejected the defendant pharmaceutical distributor's assertion that West Virginia

qualifies as an organization seeking damages "because of bodily injury" for the care, loss of services and death due to the state's alleged prescription drug epidemic.  See id. at *6.  The Court emphasized that:

> West Virginia is not seeking damages "because of" the citizens' bodily injury; rather, it is seeking damages because it has been required to incur costs due to Richie and the other drug distribution companies' alleged distribution of drugs in excess of legitimate medical need.  This distinction, while seemingly slight, is an important one.

Id.  The court noted that the actual harm complained of was economic loss to West Virginia.  See id. at *5.  Accordingly, the Western District of Kentucky found that Cincinnati did not have a duty to provide a defense to Richie.  See id.

In Travelers Property Cas. Co. of America v. Anda, Inc., Case No. 0:12-cv-62392, __ F. Supp.3d __, 2015 WL 1020873 (S.D. Fla. Mar. 9, 2015), the court interpreted similar language relating to "bodily injury" and found the analysis in Richie Enterprises to be persuasive.  See id. at 5. Accordingly, the Southern District of Florida determined that the "Gemini Policy does not cover the claims asserted in the Underlying Complaint because it seeks damages for the economic loss to the state of West Virginia

and not 'for bodily injury.'" Id.

Recently, the United States Court of Appeals for the Fourth Circuit considered whether the insurance company had a duty to defend in the underlying West Virginia lawsuit.  In Liberty Mutual Fire Ins. Co. v. JM Smith Corp., 602 F. App'x 115 (4th Cir. 2015), the court held that Liberty Mutual had a duty to defend in the West Virginia case.  See id. at 116. Significantly however, the court did not consider on appeal Liberty Mutual's argument that the West Virginia Complaint did not allege a "bodily injury," as required for coverage under the policy, because Liberty Mutual did not properly raise the argument below.  See id. at 119.  Given that the argument was waived, see id., the court's interpretation of the policy's "bodily injury" language has no persuasive value.[2]

The Court finds the rationale of Richie Enterprises and Anda to be persuasive.   Accordingly,  the  Court  finds  that  the  complaint  in  the

---

[2]The parties' initial briefs discussed the district court's decision in Liberty Mutual.  Because Liberty Mutual did not contest whether the West Virginia Complaint alleged a "bodily injury," see Liberty Mutual Fire Ins. Co. v. JM Smith Corp., 2013 C/A No. 7:12-2824, WL 5372768 (D. S.C. 2013), the Court finds the case to be inapposite.

underlying action seeks damages for economic losses to West Virginia, not for "bodily injury."  Moreover, the reasoning of Richie Enterprises and Anda is consistent with that of the Appellate Court of Illinois in Diamond State and the Seventh Circuit (applying Illinois law) in Medmarc.

(3)

Although the amended complaint in the underlying case refers to "bodily injury," West Virginia is seeking economic and injunctive relief on behalf of the State.  It is not seeking damages sustained by its citizens due to their "bodily injury" damages.  In a motion to remand in the underlying lawsuit which is attached to Cincinnati's response brief, West Virginia claimed that "[a]s amply demonstrated, the only monetary damages asserted in this action are those that enure to the State alone.  There are no monetary damages sought in this action based on damages suffered by individual West Virginia citizens."  See Doc. 26-3, at 11 n.6.  The district court agreed and remanded the case to state court, finding that it was "apparent" from the face of the Complaint that the "Attorney General is seeking a recovery of damages for the State and not one or more of its

individual citizens" and that "[o]ne strains to read the complaint herein to reach claims for individual damages." West Virginia ex rel. Morrisey v. AmerisourceBergen, Case No. 12-cv-3760, 2013 WL 1305575, at *1, *8 (S.D. W. Va. Mar. 27, 2013). Accordingly, West Virginia is not seeking damages due to bodily injury.

This case is analogous to Industrial Enterprises, Inc. v. Penn America Inc. Co., 637 F.3d 481 (4th Cir. 2011), wherein the court applied Maryland law to determine whether the insurance company had to provide coverage for "property damage" due to hazardous substances. See id. at 483. The court held that the policy's reference to "property damage" did not trigger coverage if the government (the U.S. Environmental Protection Agency) brings suit in its capacity as a regulator. See id. at 489-90. In the underlying case, West Virginia is suing for violations of a number of state laws which are traditional areas of state regulation, in order to recover for economic loss. Like the government entity in Industrial Enterprises, the State is proceeding in its capacity as a regulator.

H.D. Smith contends that the plaintiffs in the West Virginia action

bring that case pursuant to their parens patriae authority and not as regulators.  The parens patriae doctrine permits states to sue "on behalf of its citizens" when the state has a quasi-sovereign interest.  See Illinois v. AU Optronics Corp., 794 F. Supp.2d 845, 850 (N.D. Ill. 2011).  "An action brought by a State advances a quasi-sovereign interest (such that the State is the real party in interest) when the action concerns a substantial segment of the State's population."  Id. (internal quotation marks and citation omitted).  "The Supreme Court has ruled that a State has a quasi-sovereign interest in the health and well-being–both physical and economic–of its residents in general."  Id. (internal quotation marks and citations omitted).  Regardless of which label is used, a state's use of its parens patriae authority is analogous to its regulatory authority."  See id. at 856.

The Court finds that in the West Virginia action, the State is proceeding as a regulator.  Any money damages would enure to the State.  The Court concludes that any link between these damages and "bodily injury" is too attenuated to support a finding that West Virginia is seeking damages "because of bodily injury."

## IV. CONCLUSION

For the reasons stated herein, the Court concludes that the State of West Virginia's pursuit of monetary damages and injunctive relief is not a suit for or because of bodily injury to its citizens. Accordingly, it does not present a potentially covered claim pursuant to the Cincinnati policies.

Ergo, the Motion of Defendant H.D. Smith Wholesale Drug Company to Supplement the Record [d/e 32] is ALLOWED.

The Motion of Defendant H.D. Smith Wholesale Drug Company for Partial Summary Judgment [d/e 23] is DENIED.

The Court hereby declares that Cincinnati Insurance Company has no duty or obligation under the Cincinnati Primary Policies and Cincinnati Umbrella Policies to defend or indemnify H.D. Smith with respect to the underlying lawsuit filed by the State of West Virginia or for any other claims or demands relating to the injuries allegedly sustained by the State of West Virginia.

The Parties shall advise by August 4, 2015 whether additional proceedings are necessary in light of the Court's ruling on the Motion for

Partial Summary Judgment.  The entry of Judgment will be withheld until that date.

ENTER: July 28, 2015

      FOR THE COURT:

                                   s/Richard Mills
                                   Richard Mills
                                   United States District Judge